## Commonwealth *v.* Williams, Appellant.

Argued November 10, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Joel D. Caney,* with him *Abraham T. Needleman,* and *Needleman, Needleman, Tabb & Eisman,* for appellant.

*Robyn Greene,* Assistant District Attorney, with her *James T. Ranney* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, January 19, 1973:

On September 3, 1970, appellant was engaged in a fight with one Otto Young, arising out of a dispute which occurred during a game of chance. Young left the scene of the fight in his automobile and was observed to be bleeding from a wound over his eye. A few minutes later, and a few blocks from the scene of the fight, Young lost consciousness and his automobile collided with a parked vehicle. The police transported him to a hospital, where he died on September 9, 1970, the cause of death being stab wounds of the abdomen and thorax, involving the heart. Appellant was charged with murder and elected to waive a jury trial. The Commonwealth certified that the crime rose no higher than second-degree murder, and, after a nonjury trial, appellant was found guilty of voluntary manslaughter. His post-trial motions were denied, and he was sentenced to a term of imprisonment of not less than two nor more than six years. This appeal followed.

Appellant raises only one question in his appeal, asserting that the Commonwealth, as a matter of law, failed to meet its burden of proving beyond a reasonable doubt the elements of the crime of which he was convicted. In *Commonwealth v. Lee,* 450 Pa. 152, 299 A. 2d 640 (1973), we said: "In viewing the sufficiency of the evidence to support a conviction, we must carefully scrutinize the entire record, viewing the evidence in the light most favorable to the Commonwealth. Commonwealth v. Young, 446 Pa. 122, 123, 285 A. 2d 499, 500 (1971); Johnson Appeal, 445 Pa. 270, 273, 284 A. 2d 780, 781 (1971). The crucial inquiry is to determine whether, on the whole record, a finder of fact could reasonably have found that all elements of the crime charged had been proven beyond a reasonable doubt."

So viewing the evidence, the trial judge could quite properly have found that the above-described fight

occurred at approximately 9:00 p.m., on September 3, 1970. When the fight ended, the victim was observed to be bleeding from a wound over his eye. In addition, he was observed to walk to his automobile, parked nearby. An eyewitness to the event described the victim as walking in a bent-over position, "holding himself". Another witness testified that he was sufficiently concerned about the condition of the victim that he accompanied him to the auomobile. A third witness testified that he was sufficiently concerned about the victim's condition that he accompanied the victim when he drove away from the scene of the fight. The fight occurred at Thirteenth and Kater Streets in Philadelphia, and the victim drove away north on Thirteenth Street. After the victim drove a few blocks, he passed out, and his car came to a stop against a parked car on Thirteenth Street. In response to a radio call, a Philadelphia police officer arrived at the scene and found the victim lying in the front seat of the car with "quite a bit of blood on his shirt", and an unknown woman, identified as a nurse, applying pressure to the deceased's chest area to stop the flow of blood. The victim was transported to the Pennsylvania Hospital during which trip a member of the Philadelphia Fire Department Rescue Squad applied constant pressure to the chest wound with a towel. As above indicated, the victim died on September 9, 1970, at the Pennsylvania Hospital.

The physician who performed the post-mortem examination testified that the death had been caused by a stab wound of the abdomen and a stab wound of the thorax, involving the heart. He further testified that he noted an injury to the right eye lid, which proved to be a cut of the cartilage portion of the right upper eye lid. He had not referred to this injury as a stab wound in his autopsy report because from the information then available to him, he could not deter-

mine whether that wound had been caused by glass or some other sharp object. The witness to the fight who had become a passenger in the victim's automobile testified, as did the Philadelphia police officer who answered the call, that no glass had been broken in the automobile in the course of the collision and, as hereinabove noted, the victim was seen to be bleeding from a wound above his right eye, immediately after the fight. No eyewitness to the actual fight testified that he or she saw a knife, but one witness did testify that she saw a "shiny object" in appellant's hand and that he was striking the victim with that object. The trial judge, in his opinion sur post-trial motions, remarked that that witness "remained unshaken in her testimony and this Court was still impressed with the credibility of her testimony."

Appellant contends that the Commonwealth has not negated the possibility that the victim received his stab wounds subsequent to the fight. He hypothesizes that the passenger who testified at the trial might have inflicted the stab wounds between the scene of the fight and the scene of the automobile collision. He further hypothesizes that the wounds, for that matter, might have been inflicted at the Pennsylvania Hospital. The latter hypothesis would require the trier of the facts to believe that the victim had been transported to the hospital for treatment of a laceration in the eye area and had there been stabbed for unknown reasons. It would also require the factfinder to disbelieve all of that evidence concerning the discovery of the victim at the scene of the accident with a great deal of blood on his shirt and with a woman, identified as a nurse, being on the scene applying pressure to a chest wound in order to control the bleeding, as well as the testimony concerning similar first aid measures being applied by a member of the Fire Department Rescue Squad on the trip from the accident scene to the hospi-

tal. Rejection of the hypothesis involving the passenger is, of course, a question of credibility. The passenger testified that he did not stab the victim and further testified that no one was on the scene between the fight and the arrival of the police but the victim, the woman who appeared to render aid prior to the arrival of the police, and himself. When the police arrived at the scene, the passenger gave them some money which he said belonged to the deceased and which he said that he had found on the console of the victim's automobile.

Appellant also makes much of the fact that the victim walked away from the scene of the fight and drove his automobile a few blocks before lapsing into unconsciousness. It is his contention that one who had been stabbed in the heart, as well as in the abdomen, would pass out immediately and thus could not have left the scene and driven the short distance here involved. The physician who conducted the post-mortem examination testified, however, that while people wounded as the victim was wounded could not maintain consciousness for a long period of time, his medical opinion was that consciousness could be maintained for a period of as much as five minutes. That time span is not at all without the limits imposed by the Commonwealth's theory of the case.

Triers of fact can believe all, part or none of the evidence presented. *Commonwealth v. Petrisko,* 442 Pa. 575, 275 A. 2d 46 (1971); *Commonwealth v. Terenda,* 433 Pa. 519, 252 A. 2d 635 (1969). In this case, there was ample evidence from which the trier of facts could conclude that the fatal wounds were indeed inflicted during the fight between appellant and the victim. Our review of this record convinces us that the evidence amply and beyond a reasonable doubt sustained the verdict of the trial court.

Judgment of sentence affirmed.