412 A.2d 524

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Bruce PRESTON, Jr., Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 25, 1980.

Decided March 20, 1980.

Joel Every, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Division, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

Bruce Preston, Jr., appellant, was convicted by a jury in the Court of Common Pleas of Philadelphia of murder of the second degree and a weapons offense. Post-verdict motions were denied. Judgment of sentence of five to sixteen years imprisonment was imposed on the murder conviction, but sentence on the weapons offense was suspended. This appeal from the sentence for murder followed.[1]

■ Preston complains the evidence was insufficient to support a conviction for murder of the second degree.

"The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all the elements of the crime had been established beyond a reasonable doubt."

*Commonwealth v. Rose*, 463 Pa. 264, 267-68, 344 A.2d 824, 825 (1975).

So viewed, the evidence established the following:

Karla Anderson burned her hand at her home at about 3:00 p. m. on March 5, 1974. Preston, a brother of Karla and a roomer in the house, and William Anderson, Karla's husband, argued about taking Karla to a hospital for treatment. Finally, as William was about to take Karla to the hospital,

1. Preston obtained counsel, other than trial counsel, to represent him on appeal. However, this counsel later withdrew, and the court appointed counsel to assist in the appeal. This last-mentioned counsel died without prosecuting the appeal, and present counsel was then appointed.

he told Preston to "get into the car if he wanted to take [Karla] to the hospital." Preston responded: "You better have a gun." William then took Karla to the hospital for treatment.

On the return from the hospital, Karla entered the home first and met Preston and Ernest Anthony (Kareem) Eley. Preston had a gun and said to her: "I'm going to kill your husband." Karla screamed, and William, who was still outside the home, entered the porch of the home where he was confronted by Eley. Eley grabbed William and held his arms behind his back. A struggle ensued during which Preston came out of the home onto the porch. While the struggle continued, Preston fired three shots. One hit Eley in the leg while the others struck William causing wounds which resulted in his death.

Clearly, the foregoing was sufficient to sustain the conviction. But, Preston argues the testimony of the Commonwealth witnesses was too contradictory to support the convictions. In particular, Preston refers to contradictions in the testimony regarding the precise position of a Commonwealth witness, Raymond Anderson, at the time he observed the incident and a contradiction in the evidence between the precise location on the porch where William was shot and where his body was found by police. Additionally, Preston points to an alleged admission of bias based on family relationships on the part of another Commonwealth witness.

The minor contradictions in the evidence and the alleged bias of the witness were for the factfinder to resolve. "[I]t is the province of the trier of fact to pass upon credibility of witnesses and the weight to be accorded the evidence produced. *Commonwealth v. Robson*, [461 Pa. 615, 337 A.2d 573 (1975)]; *Commonwealth v. Murray*, [460 Pa. 605, 334 A.2d 255 (1975)]; *Commonwealth v. Smith*, 457 Pa. 638, 326 A.2d 60, 61 (1974); *Commonwealth v. Paquette*, 451 Pa. 250, 257, 301 A.2d 837, 841 (1973). The factfinder is free to believe all, part, or none of the evidence. *Commonwealth v. Robson, supra; Commonwealth v. Smith, supra.*"

*Commonwealth v. Dussinger,* 478 Pa. 182, 188, 386 A.2d 500 (1978). Accordingly, this argument is without merit.

If an arrest of judgment is not granted, Preston maintains a new trial should be ordered. Several reasons are advanced.

■ First, Preston argues a new trial should be granted because of a "possibly prejudicial," unauthorized communication between a juror and a court officer. The events relevant to this assignment of error are as follows:

After the defense concluded its evidence, the jury was given a recess and an extensive discussion regarding requested points for charge occurred. At the conclusion of this discussion, the assistant district attorney, in the presence of defense counsel, advised the court that, during a break, a court officer had had a conversation with a juror. The particular officer involved was identified, and the court observed it was sure the officer, being experienced, would not have discussed the case with the juror. Defense counsel and the assistant district attorney agreed with the court. The assistant district attorney then reiterated concern over court officers and jurors "joking" and the like. The court responded:

"Well, I think your point is well-taken, and at the appropriate time I will discuss it with the Court officers."

Defense counsel did not object to what occurred, did not request a colloquy be conducted with the court officer or juror, and, in fact, he expressed agreement that, given the court officer's experience, nothing improper would have occurred.

The record discloses that no objection or request for a colloquy was made at trial and that the incident was not assigned as error in post-verdict motions. Under the circumstances, the issue has not been preserved for appellate review. *Commonwealth v. Johnson,* 457 Pa. 554, 327 A.2d 632 (1974).

■ Preston next argues that the assistant district attorney improperly objected to closing argument by defense

counsel and that the court, thereafter, erred in restricting his counsel's closing argument. Defense counsel, in an attempt to show Preston was afraid of a great number of persons who had returned from the hospital with William, drew an analogy to gangs who "have left a trail of misery [in] Philadelphia." The assistant district attorney objected on the basis that the evidence did not support such an argument.

The court thereupon ruled that the assistant district attorney could respond to any misimpressions; that "this is [defense counsel's] impression of what the evidence indicates"; but, that defense counsel should not allude to "other things that happen in Philadelphia." Defense counsel stated: "All right." The court then told counsel he could make analogies, but should not talk about "what happened two weeks ago or two years ago or an unrelated incident."

Preston does not explain how the court's ruling improperly limited argument, and his claim that the assistant district attorney's objection somehow denied him a fair trial is not clear. In any event, counsel did not object or take exception to the court's ruling, and the issue was not raised in post-verdict motions. Accordingly, the issue is waived. *Commonwealth v. Johnson*, supra.

Next, Preston argues the Commonwealth improperly deprived him of a trial witness. The facts relevant to this are:

Following the return of the verdict by the jury and discussion of appellate rights and related matters, defense counsel asked for a continuation of bail, but the court indicated that it would revoke bail and that one reason for doing so was the apparent absence of a substantial issue to raise on appeal. Defense counsel responded by stating a substantial issue existed for appeal, namely the Commonwealth had deprived the defense of the testimony of Eley, an eyewitness. A discussion resulted which revealed that Eley had been arrested shortly after the killing; that he had been discharged at a preliminary hearing for lack of evidence; that, during the course of jury selection, Eley had been present in court; that, three days before the taking of

318

testimony commenced, the Commonwealth caused Eley to be rearrested;[2] and, that Eley then allegedly said he would claim his Fifth Amendment right and not testify.

We first note that this issue was not brought to the attention of the court until after the verdict was rendered by the jury. Moreover, the record does not establish whether Eley had, prior to rearrest, intended to testify or the nature of the testimony he allegedly would have given; whether the rearrest caused him to make himself unavailable; whether the rearrest was in good faith; or, whether, even after being rearrested, Eley intended to invoke his Fifth Amendment privilege. Counsel cannot sit idly by in the hopes of attaining a favorable verdict and, when such is not attained, be allowed to bring alleged errors or improprieties to the attention of the court which could have been asserted during the trial. Because the matter was not brought to the attention of the court prior to the verdict being entered, the court was deprived of an opportunity to avoid any error. Accordingly, the issue is waived. Cf. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

Finally, Preston argues trial counsel was ineffective (1) for failing to object to or seek a colloquy to determine the content of the conversation between the court officer and juror previously discussed, and (2) for failing to object to and raise as an issue in post-verdict motions the assistant district attorney's "conduct during summation for the defense," namely the objection to defense counsel's reference to gangs, supra.

The last-mentioned claim of ineffectiveness need not detain us. Trial counsel may properly object to a summation not warranted by the evidence, and this is such a case. The assistant district attorney was well within his rights, and Preston's counsel was under no obligation to press a meritless claim. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). However, the failure of counsel to

2. After Preston's trial was concluded, another preliminary hearing was conducted, and the charges against Eley were again dismissed.

ascertain or ask the court to inquire into and explore the nature and content of the conversation of the juror and the court officer is a horse of a different color. From the record before us, it is impossible to ascertain the content of the conversation or counsel's reasons, other than his knowledge of the officer's experience, for failing to pursue the matter further than he did.

If the conversation prejudiced Preston's right to a fair trial in any manner, counsel's inaction would constitute ineffectiveness absent good cause for his inaction. On the other hand, if the conversation was innocuous, counsel's inaction would not constitute ineffectiveness since he merely waived a claim devoid of merit. Cf. *Commonwealth v. Hubbard*, supra.

Accordingly, we will remand the record for an evidentiary, counselled hearing and a determination by the trial court if trial counsel was ineffective. We also direct the trial court, unless the issues are waived, to determine if, in passing sentence, the sentencing court denied Preston's right of due process or right to make a statement.[3] Following the trial court's determination, either party, if aggrieved, may appeal.

It is so ordered.

3. Preston has filed a brief pro se in this Court in which it is alleged for the first time that the sentencing court improperly considered adjudications in the Juvenile Court when he was not represented by counsel in the juvenile proceedings and improperly denied him an opportunity to make a statement at the sentencing proceeding as mandated by Pa.R.Crim.P. 1405. Since no objections were raised on these grounds during the sentencing proceeding, the issues would appear to be waived. See *Commonwealth v. Piper*, 458 Pa. 307, 328 A.2d 845 (1974); *Commonwealth v. Shoemaker*, 462 Pa. 342, 341 A.2d 111 (1975). Compare *Commonwealth v. Walker*, 468 Pa. 323, 362 A.2d 227 (1976) with *Commonwealth v. Walton*, 483 Pa. 588, 397 A.2d 1179 (1979). But we decline to now so rule because, as an apparent result of Preston's failure to serve his pro se brief on the Commonwealth as evidenced by a lack of a proof of service, we are without the benefit of a response brief. Hence, since we are remanding to the trial court for the reason stated above, Preston may there present his claims and the Commonwealth may then respond on the basis of waiver or otherwise.

LARSEN, J., filed a dissenting opinion.

FLAHERTY, J., filed a dissenting opinion.

KAUFFMAN, J., did not participate in the consideration or decision of this case.

FLAHERTY, Justice, dissenting.

I must dissent. By necessity there is contact between a court officer and jurors during a trial, as the court officer is responsible for the jury's accommodations and comfort, and is the physical connection between the Court and the individual jurors. Conversation, which would include the exchange of pleasantries, is commonplace, necessary and even desirable. To require an inquiry into each instance of conversation between a juror and a court officer is unrealistically burdensome to the trial process.

Accordingly, I dissent.

LARSEN, Justice, dissenting.

I dissent. The judgment of sentence should be affirmed. Jurors do not take "vows of silence." They are permitted to talk to their friends, family, other jurors, court officers, etc. They are only prohibited from speaking to persons who are involved in the case in which they are participating. Of course, jurors are not to discuss the case with anyone until the official deliberations begin.