J-S07009-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                       :            PENNSYLVANIA
                                       :

             v.                           :
                                       :
                                       :

BRYAN SEAN GALVIN                :
                                       :

             Appellant          :     No. 707 MDA 2018

Appeal from the Judgment of Sentence March 29, 2018
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0002572-2006

BEFORE:   OLSON, J., McLAUGHLIN, J., and PELLEGRINI*, J.

MEMORANDUM BY OLSON, J.:        **FILED: MARCH 27, 2019**

Appellant, Bryan Sean Galvin, appeals from the judgment of sentence

entered on March 29, 2018. We affirm.

The trial court ably summarized the facts relevant to this appeal:

> [On the night of January 30, 2006, Appellant shot and killed
> Kristopher Kolesnik (hereinafter "the Victim"). During
> Appellant's trial, Appellant] testified on his own behalf, as did
> his brother, Corey Galvin. Corey Galvin testified that he
> (Corey) was a heroin addict, and that he frequently used
> heroin along with [Appellant, the Victim], and Michael Miller.
> . . .
>
> [Appellant] testified that he and the [Victim] were friends[]
> and fellow heroin addicts. He recounted the events of the
> day of [the Victim's] death[,] including the steps taken by
> him and [the Victim] to obtain heroin and their use of heroin
> back at [Appellant's] apartment, the scene of [the Victim's]
> death.
>
> The essence of [Appellant's] testimony was that he accidently
> shot and killed [the Victim] during horseplay with a firearm
> that he thought was unloaded. During the course of

---

\*   Retired Senior Judge assigned to the Superior Court.

[Appellant's] testimony, he made numerous references to his heroin addiction, his efforts to obtain heroin on the day of the shooting, [the Victim's] use of heroin that day, and his own use before the shooting and through the time that he was apprehended by police. In all, [Appellant] devoted 89 lines of his testimony to his heroin addiction/use.

[Appellant], through his counsel, requested that the jury be instructed on the offense of involuntary manslaughter as a lesser included offense to the charges of first and third degree murder. Despite the largely incredible and illogical nature of [Appellant's] version of events, [the trial court] agreed and did give the requested instruction.

Prior to closing argument, both [Appellant] and his counsel specifically requested that the [trial] court not charge the jury pursuant to Standard Criminal Jury Instruction [8.308B], which provides that [] voluntary intoxication is not a defense to the crime of murder, [but] can serve as a factor reducing the crime to murder of the third degree. . . .

Given, however, the extensive testimony, largely from [Appellant] himself, as to his addiction and consumption of heroin [on] the day he shot [the Victim, the trial court] informed all counsel that [it] intended to give the instruction set forth at Standard Criminal Jury Instruction [8.308A].

Modified to suit the circumstances of the case, [the trial court] instructed the jury as follows, over [Appellant's] objection:

> Voluntary drugged condition is not a defense to a criminal charge. A person who voluntarily uses drugs cannot become so drugged that he is legally incapable of committing a crime.

> There is another related rule. A defendant is not allowed to rely on evidence of his own drug condition to prove that he lacked a mental state required for a particular crime. Keep this rule in mind when you are deciding whether the defendant had the intent, knowledge, and awareness of risk required for the crimes charged.

As I already told you, the defendant cannot be guilty of these crimes unless at the time of the crimes he had the relevant intent which I have already given. This mental state can be actual or it can be imputed. Actual means that it was present in the defendant's conscious mind; imputed means that the defendant will be regarded as having that mental state even if it was not present in his consciousness.

Only consider whether to impute the required state of mind if you cannot find that the defendant actually had it. In our case, if you determine that you must consider whether to impute the required state of mind, you should proceed as follows: When each of you is deciding whether to impute or disregard the evidence of drug condition, deal with the defendant as if he had been sober and base your decision on the other evidence.

This means that if you would be satisfied beyond a reasonable doubt by the evidence leaving out the evidence of drug condition that the defendant had the required intent, knowledge, or awareness of risk, then you may conclude that the required state of mind has been proved beyond a reasonable doubt.

[N.T. Trial, 3/29/18, at 684-685.]

Trial Court Opinion, 8/6/18, at 2-3 (some internal citations omitted).

The jury found Appellant guilty of first-degree murder, abuse of a corpse, tampering with or fabricating physical evidence, theft by unlawful taking or disposition, receiving stolen property, and unauthorized use of an automobile.[1] On March 29, 2018, the trial court sentenced Appellant to serve an aggregate term of life in prison, followed by three-and-a-half to 11 years in prison, for his convictions. N.T. Sentencing, 3/29/18, at 9-10.

---

[1] 18 Pa.C.S.A. §§ 2502(a), 5510, 4910(1), 3921(a), 3925(a), and 3928(a), respectively.

Appellant filed a timely notice of appeal. He raises one claim:

Did not the trial court err and abuse its discretion by instructing the jury concerning voluntary intoxication as a defense to some crimes where Appellant specifically declined the instruction?

Appellant's Brief at 4 (some internal capitalization omitted).

As our Supreme Court has explained:

When a court instructs the jury, the objective is to explain to the jury how it should approach its task and the factors it should consider in reaching its verdict. Instructions on defenses or theories of prosecution are warranted when there is evidence to support such instructions. In examining jury instructions, our [standard] of review is to determine whether the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case. A charge will be found adequate unless the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error.

*Commonwealth v. Chambers*, 980 A.2d 35, 49-50 (Pa. 2009) (internal quotations and citations omitted).

With respect to the abuse of discretion standard, we note:

When a court comes to a conclusion through the exercise of its discretion, there is a heavy burden to show that this discretion has been abused. It is not sufficient to persuade the appellate court that it might have reached a different conclusion, it is necessary to show an actual abuse of the discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. Absent an abuse of that discretion, we will not disturb the ruling of the trial court.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1140 (Pa. 2007) (internal citations omitted).

On appeal, Appellant claims that the trial court erred when it provided the jury with Pennsylvania Suggested Standard Criminal Jury Instruction 8.308A[2] – after he specifically requested that the trial court not provide the jury with Pennsylvania Suggested Standard Criminal Jury Instruction 8.308B.[3] According to Appellant, "[t]he general instruction [found

_____

[2] Pennsylvania Suggested Standard Criminal Jury Instruction 8.308A is titled "voluntary intoxication or drugged condition no defense." The trial court's jury instruction, recited at pages 2 and 3 of this memorandum, parroted Instruction 8.308A. *See supra* at **2-3; Pa.S.S.J.I. (Criminal) 8.308A.

[3] Pennsylvania Suggested Standard Criminal Jury Instruction 8.308B, entitled "voluntary intoxication or drugged condition as defense to first-degree murder," declares:

> 1. I'll begin with some general rules about [intoxication] [drugged conditions]. Generally speaking, a person who voluntarily used [intoxicants] [drugs] is not allowed to claim as a defense that he or she was so [intoxicated] [drugged] that he or she was legally incapable of committing a crime. Nor is the person allowed to rely on evidence of his or her own [intoxication] [drugged condition] to prove that he or she lacked an intent, knowledge, or other mental state required for a particular crime.
>
> 2. These general rules do not apply to a charge of first-degree murder. The defendant is permitted to claim as a defense that he or she was so overpowered by [intoxicants] [drugs] that the defendant had lost control of his or her faculties and was incapable of forming the specific intent to kill required for first-degree murder.

in Instruction 8.308A], without the specific exception [found in Instruction 8.308B,] is a misstatement of the law . . . and thus an erroneous instruction." Appellant's Brief at 9. This claim fails.

Generally speaking, "[n]either voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge." 18 Pa.C.S.A. § 308. However, as our Supreme Court has explained: "[e]vidence of substantial intoxication . . . [, i]f believed, [] may negate the intent to kill necessary for a conviction of murder in the first degree, and a defendant is entitled to an instruction to that effect." **Commonwealth v. Rose**, 344 A.2d 824, 826 (Pa. 1975); **see also** 18 Pa.C.S.A. § 308; **Commonwealth v. Breakiron**, 571 A.2d 1035, 1041 (Pa. 1990) ("Where the question of intoxication is introduced

_____

> 3. The Commonwealth has the burden of disproving this defense. Thus, you cannot find the defendant guilty of first-degree murder unless you are satisfied beyond a reasonable doubt that the defendant, despite any [intoxicated] [drugged condition], was at the time capable of forming a specific intent to kill and did in fact form that intent. [As I told you earlier, a specific intent to kill means [a conscious, fully formed intention to kill] [*description*].]
>
> 4. Voluntary [intoxication] [drugged condition] may reduce a murder from first-degree to third-degree but no lower. The general rules apply to lesser crimes. They prevent a defendant from using his or her own voluntary [intoxication] [drugged condition] in any way to defend himself or herself against an accusation of third-degree murder [voluntary manslaughter] [*name all other charged crimes or lesser included offenses that are in issue*].

Pa.S.S.J.I. (Criminal) 8.308B.

into a murder case its only effect could be to negate the specific intent to kill which is required for a finding of murder of the first degree. If intoxication does render an accused incapable of forming the necessary intent the result is to reduce the crime to a lesser degree of murder. In no event does the reduction change the character of the crime from murder to manslaughter") (internal quotations, citations, and corrections omitted).

In the case at bar, Appellant specifically requested that the trial court **not** provide the jury with Instruction 8.308B and Appellant specifically requested that the court **not** inform the jury that, if it believed his intoxication rendered him "incapable of forming the necessary intent [to commit first-degree murder,] the result [would be] to reduce the crime to a lesser degree of murder." *Breakiron*, 571 A.2d at 1041 (internal quotations and citations omitted); *see* N.T. Trial, 3/29/18, at 662 (Appellant's counsel informed the trial court: "[Appellant] has indicated he is requesting the court to charge on involuntary manslaughter. I indicated to [Appellant] I would ask the court to charge 8.308(B) which is the voluntary intoxication. **It's my understanding [Appellant] does not wish the court to charge that**") (some internal capitalization omitted) (emphasis added); N.T. Trial, 3/29/18, at 665 (attempting to clarify Appellant's position, the trial court asked Appellant's counsel: "When I had asked you before we recessed, I thought your request was for the predecessor one that deals with reduction of Murder 1 to Murder 3. Is that what you said?;" Appellant's counsel responded: "**[Appellant] indicated he did not want that given**") (emphasis added).

Nevertheless, during trial, substantial evidence was produced that Appellant was voluntarily intoxicated at the time of the murder.[4] Given this evidence, it was necessary for the trial court to explain to the jury that Appellant's voluntary intoxication was not a defense to the myriad of other criminal charges Appellant faced.[5] Therefore, in the face of Appellant's objection to Instruction 8.308B, the trial court was required to provide the

---

[4] N.T. Trial, 3/27/18, at 202-203 (former Reading Detective Sergeant Jed Habecker testified that Appellant urinated on himself while in a holding cell; he was asked whether "urinating on yourself [was] a typical response from a normal individual" and testified: "I'd say a small percentage of people who are extremely intoxicated may do that occasionally, yes"); N.T. Trial, 3/28/18, at 429 (former Reading Police Sergeant Todd Trupp testified that paraphernalia for injecting heroin was found in Appellant's residence); N.T. Trial, 3/29/18, at 595 (Appellant's brother testified that, around the time of the murder, he was regularly using heroin with Appellant and the victim); 601 (Appellant testified that, at the time of the murder, he was "high from heroin") 603-606 (Appellant testified as to his heroin use immediately prior to the murder); 607-608 (Appellant testified that, when he pulled the trigger, "the dope [was] kicking in real good and [he was] kind of like feeling, like, great"); 616 (Appellant testified "I was high on dope" at the time of the murder); 618-619 (Appellant testified that, when he tried to dispose of the victim's body, he had "stopped snorting [heroin] and went right back to shooting it"); 622-623 (Appellant testified about his heroin use around the time of the murder); 624-625 (Appellant testified that he was high at the time of the murder); 632 (Appellant testified "Listen, my mind was about half here and half gone and I was high"); **see also** N.T. Trial, 3/26/18, at 81-82 ("So the evidence will show something you already know: drugs and guns don't mix. And these guys . . . whoever was in that room that night were messing with guns and a guy ended up dead. And that was sad but there's going to be no evidence presented to you that it was murder").

[5] As noted, the Commonwealth also charged Appellant with abuse of a corpse, tampering with or fabricating physical evidence, theft by unlawful taking or disposition, receiving stolen property, and unauthorized use of an automobile.

jury with Pennsylvania Suggested Standard Criminal Jury Instruction 8.308A. **Chambers**, 980 A.2d at 49-50 ("[i]nstructions on defenses or theories of prosecution are warranted when there is evidence to support such instructions") (internal quotations and citations omitted). In other words, even though Appellant made the extraordinarily poor decision to have the trial court omit Instruction 8.308B, it does not mean that Appellant could then confuse the jury into thinking that his voluntary intoxication was a defense to the remaining charges he faced.[6] Thus, the trial court did not abuse its discretion when it provided the jury with Instruction 8.308A.

Here, any prejudice to Appellant's case was caused by Appellant, himself, and was not the result of trial court error. As such, Appellant is not entitled to relief and Appellant's claim on appeal thus fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

---

[6] During trial, Appellant did not object to the trial court's phrasing of the voluntary intoxication charge and, in this appeal, Appellant does not claim that the trial court's phrasing of the instruction caused him prejudice. **See** N.T. Trial, 3/29/18, at 662-665, 684-685, and 698; **see also** Appellant's Brief at 8-9. Rather, Appellant simply claims that the trial court erred when it instructed the jury on voluntary intoxication at all, when he requested that the trial court omit the "voluntary intoxication or drugged condition as defense to first-degree murder" charge found at Pennsylvania Suggested Standard Criminal Jury Instruction 8.308B. Appellant's Brief at 8-9.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/27/2019